**UNITED SAVINGS LIFE INSURANCE COMPANY, Appellant,**

v.

**Marvine Claudia (Wiley) COULSON, Appellee.**

No. 8788.

Court of Civil Appeals of Texas, Amarillo.

Dec. 27, 1977.

Rehearing Denied Jan. 23, 1978.

**212**

Elliott, Churchill, Hansen, Dyess & Maxfield, Bobby D. Dyess, Dallas, for appellant.

Jones, Trout, Flygare & Moody, Charles B. Jones and W. Hollis Webb, Jr., Lubbock, for appellee.

ROBINSON, Chief Justice.

This is a suit to recover on a life insurance policy. Decedent was an agent of the insurer, and had submitted an application on himself. The company rejected him as a standard risk and offered him a rated-up policy. After some delay he tendered the additional premium, accepting the counteroffer on the day before his death. Between the date of the initial application and the date of acceptance of the counteroffer, decedent learned that he suffered from severe coronary artery disease, which was the eventual cause of death. Decedent's widow brought suit on the policy when the insurer denied liability. A jury returned a verdict for decedent's widow, and the insurer has appealed. Reversed and rendered.

Walter Coulson was a life insurance agent for the defendant, United Savings Life Insurance Company, from 1968 until he died on July 6, 1970. On March 15, 1970, Coulson applied for a $50,000 insurance policy on his own life with his company. The company's application form included a receipt which offered immediate coverage if several conditions were fulfilled. If the agent received the first premium at the time of the application, he was to deliver the conditional receipt to the applicant. The company received Coulson's application with the receipt already removed and with a check for the first premium at the rate for a standard risk. When Coulson made this application he knew that he suffered from high blood pressure. He had been taking medication for this condition for several years. His wife testified that Coulson knew his application would not be accepted as a standard risk because of the high blood pressure. Coulson had applied for a policy with United Savings Life during 1969 and at that time the company refused to write a standard policy because of the high blood pressure. Coulson did not accept the rated-up policy in 1969. There is no evidence that his condition had improved when he made the March, 1970, application.

On May 26, 1970, Coulson first visited Dr. Roy Sheffield in Lubbock. He complained to Doctor Sheffield of chest pains and heart palpitations. Doctor Sheffield performed an electrocardiogram which showed a positive finding of coronary artery disease. On this first visit, Doctor Sheffield told Coulson that he had a serious disease. The doctor said in his deposition, "I don't know that I used those words exactly, but I indicated to him that he had heart trouble and he was taking nitroglycerin for that purpose."

On June 8, 1970, a rated-up policy was prepared by United Savings and forwarded to Coulson with a notice that the contract had been rated up. The notice requested that the agent (Coulson) collect an additional premium of $289.00 when he delivered the policy. Coulson did not immediately accept the policy.

Coulson returned to Doctor Sheffield on June 12 for further examination. At this time Coulson was taking blood pressure medication (which he had been taking for

several years), nitroglycerin for pain, and pentriol, a long lasting drug to dilate the blood vessels. On June 12, Doctor Sheffield felt that Coulson was having coronary insufficiency, an impending heart attack, and told him so.

Doctor Sheffield saw Coulson again on June 26, 1970. Coulson related two episodes of anginal pains both of which awakened him from his sleep. Doctor Sheffield testified that heart disease is getting quite serious when one has pains while asleep or resting.

On July 5, 1970, Coulson mailed a check dated July 6, 1970 in the amount of the full additional premium ($289.00), together with the signed delivery receipt. Coulson died of a heart attack on July 6, 1970.

Plaintiff brought suit on the policy alleging that it was effective March 15, 1970, when Coulson made application and submitted the first premium. The policy provided:

EFFECTIVE DATE—*This policy will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and continued insurability of the proposed insured.* If the first premium is paid in exchange for a binding receipt on the date of application, then this policy will become effective as provided in the binding receipt.

(Emphasis added). The binding receipt provided:

*The insurance applied for shall be effective from the date of the application numbered as on the reverse side only if Conditions A, B, and C, have been fulfilled.* CONDITION A: A deposit at least equal to the premium for one full month's insurance under the terms of the policy contract applied for has been received by the Company. CONDITION B: As required by the Company, (1) the Parents' Health Statement has been completed and received by the Company, (2) the medical examination or examinations have been completed and received by the Company, and/or (3) any further information required by the Company has been received by the Company. CONDI-

TION C: On the date of this application or upon the fulfillment of the conditions set forth in Condition B above, which ever date is later, *the proposed insured was insurable and acceptable under the Company's rules and practices for insurance on the plan in the amount and at the class of risk applied for* in Part I of the application. Upon fulfillment of the conditions set forth in Conditions A, B, and C above, the insurance applied shall be effective from the date of this application, and the policy contract issued pursuant to this application shall be the date of this application.

(Emphasis added).

Defendant denied that a conditional receipt was issued, and further contended that even if issuance was proved, the conditions of the receipt were not met because Coulson was not insurable at the class of risk applied for on March 15, 1970. Defendant alleged that the heart condition rendered Coulson uninsurable at any rate, and that Coulson, as both agent of the company and insured, breached his duty to advise defendant of the change in his health.

The jury findings in response to the special issues submitted were:

1. There was not such a change in the physical condition of Walter Coulson from March 15, 1970 (application submitted) to June 8, 1970 (mailing of rated-up policy) as to affect his insurability.

5. There was such a change in the physical condition of Walter Coulson from March 15, 1970 to July 5, 1970, as to affect his insurability.

6. Walter Coulson became aware of such change in his physical condition during the period March 15, 1970 to July 5, 1970, as would affect his insurability.

7. Walter Coulson was aware that such change would be of some medical significance to the underwriting department of United Savings Life Insurance Company.

8. The underwriters of United Savings Life Insurance Company would not have written a policy of insurance on

Walter Coulson's life because of the change in Walter Coulson's physical condition during the time inquired about in Issues No. 5 and No. 6.

9. Walter Coulson received a binding receipt on March 15, 1970, the date on which he made application for life insurance.

10. Condition C of the receipt was fulfilled.

11. United Savings Life Insurance Company issued to Walter Coulson a policy of life insurance effective March 15, 1970.

12. The policy was issued on the basis of the health of Walter Coulson on March 15, 1970.

The court denied defendant's motion for judgment notwithstanding the verdict and granted judgment for plaintiff on the verdict. Plaintiff was awarded the face amount of the policy, a 12% statutory penalty, interest from the date of death, and attorney's fees.

At the outset, it is apparent that, as a matter of law, Condition C of the conditional receipt was not fulfilled. Considering the evidence in the light most favorable to plaintiff's position, there is no evidence that at any material time Coulson was insurable at the class of risk applied for in his March 15, 1970, application.

■ The application submitted by agent Walter Coulson on his own life, dated March 15, 1970, was rejected by United Savings Life Insurance by their counteroffer of a rated-up policy sent to Coulson on June 8, 1970. Where a party applies for insurance, and there is an acceptance upon different terms from those offered, it results in a rejection of the offer, but operates as a counteroffer, which must be accepted by the insured in order to render the insurance effective. *Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co.,* 42 S.W.2d 248 (Tex.Comm'n App.1931). The Texas Supreme Court has applied this principle to life insurance:

For acceptance by the insurer to constitute a completion of the contract . . such acceptance must be of the terms and

conditions exactly as proposed by the application. If the insurer accepts the application only upon certain conditions being met, or proposes a new form of contract with new terms and provisions, that action of the insurer amounts to a rejection of the original proposition, and a counter offer which must be accepted by the insured in order to consummate the transaction. 12 Appleman, Insurance Law and Practice, § 7151, p. 203.

*Republic National Life Insurance Co. v. Hall,* 149 Tex. 297, 232 S.W.2d 697, 699 (1950).

■ Therefore, the final power of acceptance rested with Coulson. He mailed the insurer the additional premium on the day before his death. Where payment by mail is authorized, performance is completed when a letter containing the remittance, properly addressed, is deposited in the mail. *Lawrence v. Continental Fire and Casualty Insurance Corp.,* 203 S.W.2d 967, 969 (Tex. Civ.App.-Dallas 1947, no writ). Prior to his death Coulson accepted the rated-up policy on his life.

■ The effect of Coulson's acceptance of the rated-up policy was to discontinue the temporary coverage which the receipt provided, if he had met the "insurability" provision of the receipt. Such temporary insurance coverage is only effective until the application is rejected or superseded by the issuance of a policy. *Colorado Life Co. v. Teague,* 117 S.W.2d 849, 853 (Tex.Civ. App.-Eastland 1938, writ dism'd). In the instant case, there was no policy in effect before July 5, when Coulson accepted the policy by remitting the additional premium and the delivery receipt. Therefore, any rights of Coulson's widow are governed by the policy itself.

The policy states that it will be effective as soon as it has been delivered and the first premium has been paid during the lifetime and continued insurability of the proposed insured. Such a provision is known as a "good health" clause, common in most life insurance policies.

■ Good health is defined as a state of health free from any disease or bodily infirmity of a substantial nature which affects the general health of the person and seriously or materially increases the risk to be assumed by the insurer. A good health provision is breached if the applicant is suffering from a serious kind of illness, which continues and eventually causes his death. *Great American Reserve Insurance Co. v. Britton,* 406 S.W.2d 901, 905 (Tex. 1966).

■ A good health clause is valid and prevents the policy from becoming effective if the insured, at the time of delivery, is afflicted with a disease or infirmity which increases the risk under the policy. *Great National Life Insurance Co. v. Hulme,* 134 Tex. 539, 136 S.W.2d 602 (Tex.Comm'n App. 1940, opinion adopted). The burden is on the insurer to prove that the prospective insured was not in good health at the time of delivery of the policy. In the instant situation, involving a rated-up policy, acceptance and delivery did not occur until the time that Coulson tendered the additional premium and the delivery receipt on July 5, 1970.

Appellant company sustained its burden of proof by securing jury findings to the effect that Coulson was aware that there had been a material change in his physical condition between the application and the delivery of the policy on July 5, 1970, and that United Savings Life Insurance Company would not have written a policy on Coulson had it been informed of that change.

■ One who submits an application to an insurance company has a duty to inform that company of any changes in his health between the time he makes application and the date of delivery and acceptance.

> [E]ven the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If while the company deliberates, he discovers facts which make portions of his application no longer true, the most

elementary spirit of fair dealing would seem to require him to make full disclosure.

*Stipcich v. Metropolitan Life Insurance Co.,* 277 U.S. 311, 317, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1927).

■ The holding of *Stipcich v. Metropolitan Life Insurance Co.* has been applied in Texas. *Forrester v. Southland Life Ins. Co.,* 43 S.W.2d 127 (Tex.Civ.App.-Amarillo 1931, writ ref'd). In *Aetna Life Insurance Co. v. Shipley,* 134 S.W.2d 342 (Tex.Civ. App.-Fort Worth 1939, writ dism'd jdgmt cor.), the court extended the reasoning of *Stipcich* :

> Furthermore, we believe that where an applicant for insurance is ill and goes to a physician for examination and treatment, even if the facts do not disclose that the applicant was advised as to his actual condition, or if there be doubt in the mind of the physician and in the mind of the applicant for insurance as to his real condition, it is the duty of the applicant to make such facts as are known to him, with respect to his illness, his treatment by a physician and his condition, known to the insurance company in such an application for insurance as was required of Shipley.

*Id.* at 347.

The *Stipcich* holding was also followed in *Moore v. American Home Mutual Life Insurance Co.,* 174 S.W.2d 788 (Tex.Civ.App.-Dallas 1943, writ ref'd w. o. m.), wherein an insurance agent applied for a policy on his daughter. In considering the agent's duty to his company, the Court stated:

> We think it was insured's duty, and certainly appellant's, to advise the insurer of the true condition of the risk; it was appellant's duty, as agent of his principal, to know the condition of insured's health and to truly advise his principal as to her condition before incurring liability. Manifestly, appellant could not be the beneficiary of his own wrong, or, by his acts, cause the Company to enter into a contract with another, naming him beneficiary, when such contract evidently would

not have been made had there been a full and true disclosure of insured's physical condition.

We conclude that the conditions under which the policy in question would have become effective were not fulfilled.

The judgment of the trial court is reversed and judgment here rendered that plaintiff take nothing.

DODSON, J., not participating.