Francisco (Paco) SANCHEZ; Ralph Sanchez; Yolanda Munguia; Veronica Sanchez and Rose Marie Cespedes, Plaintiffs-Appellants,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Corporation, Robert E. Sutton, and David Cave, Defendants-Appellees.

No. 82CA0750.

Colorado Court of Appeals, Div. III.

Feb. 2, 1984.

Rehearing Denied March 22, 1984.

Certiorari Denied May 7, 1984.

Williams, Trine, Greenstein & Griffith, P.C., William A. Trine, Boulder, Safran & Adkins, Hubert M. Safran, Denver, for plaintiffs-appellants.

Baker & Hostetler, James A. Clark, Bruce D. Pringle, Denver, for defendants-appellees Connecticut General Life Ins. Co.

White & Steele, P.C., Stephen K. Gerdes, John P. Craver, Denver, for defendants-appellees Robert E. Sutton and David Cave.

BABCOCK, Judge.

Plaintiffs, the children of Francisco "Paco" Sanchez, deceased, appeal the granting of defendants' motion for summary judgment in their action seeking the proceeds of a temporary life insurance policy allegedly created by a conditional receipt. We reverse.

Defendants Robert Sutton and David Cave were insurance agents employed by defendant Connecticut General Life Insurance Company. Cave was Sutton's supervisor and office manager. In February 1973, Sutton analyzed the various businesses operated and owned by Sanchez, and made recommendations regarding possible reorganization of those businesses.

Sutton concluded that Sanchez was underinsured and recommended that he apply for $1,000,000 of life insurance through Connecticut General. The application form signed by Sanchez on May 16, 1973, contained the following question: "If standard insurance is not approved, shall a rated-up policy be issued?" Sanchez responded affirmatively. Thereafter, on May 22, 1973, Sutton, as Connecticut General's agent, offered Sanchez temporary insurance coverage in the sum of $300,000 in exchange for

a $5,000 premium. Sanchez accepted this offer and paid the premium. The conditional receipt for the premium provided that the temporary insurance would terminate if the applicant was rejected as a standard risk. However, the receipt was never delivered to Sanchez and he was not otherwise informed of this condition.

On the same day, Sutton accompanied Sanchez to two physical examinations required for approval of the application and conducted by physicians selected by Connecticut General. The physicians informed Sanchez they would advise Connecticut General that he appeared to be in good health. When the results of the physical examinations were reported to its home office, Connecticut General requested that Sanchez undergo a master EKG. On June 29, having received a report of the results of the EKG, Connecticut General informed Sanchez' representative that it would not insure Sanchez as a standard risk but offered to do so on a rated basis at a 300 percent increased premium. Within two days, Sanchez accepted the rated policy.

On July 3, Sanchez was examined by his physician after complaining of blood in his stools. That same day his representative and Sutton traveled to Fort Collins and arrangements were made with Sanchez's Fort Collins bank to finance the remainder of the initial premium on the rated policy. Two days later, gastro-intestinal tests were conducted on Sanchez, and a Fort Collins bank remitted $41,300 to Connecticut General to cover the remainder of the first annual premium. The next day, July 6, a gastroscopy was performed which indicated a tumor in the upper part of Sanchez' stomach. On July 7, Sanchez underwent surgery during which his entire stomach was removed.

Sutton learned that Sanchez was ill on July 10 and notified Connecticut General of that fact on the next day. Sanchez died on July 12. On July 13, Connecticut General, never having delivered the policy, refunded $41,300 to the Fort Collins bank; the $5,000 premium paid in exchange for the temporary insurance, which was retained in an account separate from that maintained for the rated policy, was not returned until July 25.

On December 12, the executor of Sanchez' estate brought suit in Denver District Court against Connecticut General to recover under the $1,000,000 policy for which Sanchez had applied. The case was removed to federal court. The parties eventually arrived at a settlement by which Connecticut General agreed to pay $20,000 conditioned on the suit being dismissed with prejudice. The settlement was approved by the Denver Probate Court, and the federal court dismissed the case with prejudice on August 26, 1974.

The executor of the Sanchez estate assigned to the plaintiffs whatever interest, if any, remained in Sanchez' insurance policy. Plaintiffs then filed this suit on March 1, 1979, alleging Sanchez was or should have been covered by temporary life insurance at the time of his death, based on the conditional receipt. The plaintiffs also claimed that Connecticut General intentionally breached the alleged life insurance policy and negligently failed to issue the policy.

In April 1979, Connecticut General filed a motion for summary judgment on the basis that the action was barred by a release executed in conjunction with the federal action. This motion was denied.

■ Thereafter, the parties filed cross-motions for summary judgment. Defendants' motion was based upon the distinctly separate basis of termination of the temporary insurance policy. These motions were also denied but were later renewed upon a stipulation of facts which was intended by the parties to posture the case for a legal ruling upon the termination issue. It is the summary judgment in favor of defendants entered upon this motion that is before us for review. The parties have not briefed or argued the issue of release. Thus, the parties having made no argument as to this issue and it is not being preserved for appeal, we have no authority to consider it sua sponte. *See Glennon Heights, Inc. v.*

*Central Bank & Trust,* 658 P.2d 872 (Colo. 1983).

In granting Connecticut General's motion for summary judgment, the trial court concluded that any temporary insurance coverage was an:

"[A]ncillary right arising out of the original application for insurance, and that Connecticut General's communication to Sanchez that he was being rejected as a standard risk, along with the counter-offer to insure him on a rated basis and the acceptance of this counter-offer by Sanchez, operated to terminate the original offer for a standard policy, as contained in the application, and also terminated any temporary insurance which might have been in effect."

It further concluded that since the counter-offer and acceptance terminated the temporary insurance, any alleged dereliction of duty of Sutton and Cave could not have caused a loss to plaintiffs and was not actionable. We do not agree with this analysis.

■ Under the circumstances of this case, we adopt a rule of reasonable expectation wherein:

"An insurer who wishes to avoid liability must not only use clear and unequivocal language evidencing its intent to limit temporary coverage, but it must also call such limiting conditions to the attention of the applicant. Absent proof of such disclosure, coverage will be deemed to be that which would be expected by the ordinary layperson, namely complete and immediate coverage upon payment of the premium." *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978).

*See Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir. 1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Puritan Life Insurance Co. v. Guess,* 598 P.2d 900 (Alaska 1979).

■ Application of this rule requires an analysis of the totality of the circumstances involved in the transaction from the point of view of an ordinary layperson.

*Collister v. Nationwide Life Insurance Co., supra.* The issue is: What did the lay-applicant think he was buying in exchange for the premium.

■ Here, the $5,000 premium is clearly consideration for temporary insurance. The following circumstances give rise to a question of fact as to whether Sanchez had a reasonable expectation that the temporary insurance coverage would continue until Connecticut General *finally* acted upon his application for *an* insurance policy: 1) Sanchez' alternate application for a rated policy; 2) Connecticut General's retention of the $5,000 premium pending acceptance of the rated policy and separate refund thereof after Sanchez' death; and 3) Sanchez' ignorance of the terms of the temporary insurance resulting from Connecticut General's failure to deliver the conditional receipt to him or otherwise inform him of its terms.

■ Moreover, under the trial court's strict contractual analysis of offer/counteroffer, Connecticut General's withholding of the premium while Sanchez' application for a rated policy was pending creates a question of fact as to whether Sanchez reasonably expected that a *new* temporary policy had been effected. Hence, because reasonable persons might reach different conclusions or draw different inferences from the undisputed facts, summary judgment should have been denied. *See Hasegawa v. Day,* (Colo.App. No. 82CA0428 ann'd November 17, 1983).

Examination of the dynamics of the insurance transaction to ascertain the reasonable expectations of the lay consumer avoids the unconscionable result of an insurance company holding and having the benefit of premiums without providing coverage in return. This rule is but a hybrid of the Colorado common law doctrine of "promissory estoppel." *See Kiely v. St. Germain,* 670 P.2d 764 (Colo.1983).

■ Plaintiffs also contend the trial court erred in denying their separate motion for partial summary judgment against

Connecticut General for the $300,000 temporary insurance proceeds. We do not address this contention because the trial court's denial of this summary judgment motion is not a final appealable order. *See Glennon Heights, Inc. v. Central Bank & Trust, supra;* C.A.R. 1(a)(1).

Judgment reversed.

PIERCE, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

I respectfully dissent. In my view the majority errs in adopting and applying the rule of reasonable expectation in this instance. And, even more clearly, defendants were entitled to a summary judgment on the issue of release.

### I.

I believe the settlement negotiated between Connecticut General, the executor of Sanchez' estate, and the plaintiffs in this suit, to be dispositive of this action for recovery of proceeds of temporary life insurance. The settlement provided, in relevant part:

> "[I]n consideration of this agreement and of the payment of $20,000 to [the executor], receipt of which is hereby acknowledged by [the executor], each of the parties hereto by this legal contract, individually and collectively, does hereby release and forever discharge Connecticut General Life Insurance Company, its successors or assigns, of and from *all and any manner of action and actions, cause or causes of action, which has arisen or which may hereafter arise by reason of any application for,* or policy of insurance on the life of Francisco V. (Paco) Sanchez." (emphasis added)

In my view summary judgment for defendant should have been granted on the basis of this settlement agreement.

Contrary to the view of the majority, we can and should address this issue, even though the trial court granted summary judgment on a different theory. This is not an appeal of a denial of a summary judgment motion, which would be interlocutory in nature and not reviewable by this court. Nor is this an appeal of a denial of a summary judgment motion following a trial on the merits, which is also not reviewable. *Manuel v. Fort Collins Newspapers, Inc.,* 631 P.2d 1114 (Colo.1981). Rather, we are considering the granting of a motion for summary judgment, which is a final order and is reviewable. *See Glennon Heights, Inc. v. Central Bank & Trust,* 658 P.2d 872 (Colo.1983); C.A.R. 1(a)(1). In such a review, we are not limited to considering only those grounds for granting the motion which were found persuasive by the trial court. 10 *C. Wright, A. Miller & M. Kane, Federal Practice & Procedure* § 2716 (1983). *Cf. Reynold v. United States,* 643 F.2d 707 (10th Cir.1982), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981).

The instant action for proceeds of temporary insurance arose out of the "application for ... insurance on the life of Francisco V. (Paco) Sanchez" and is barred by the settlement agreement, signed by the plaintiffs and the executor, which released Connecticut General from any liability. A release results "in the total extinguishment of a pre-existing claim or right or lien or obligation." *Trustee Co. v. Bresnahan,* 119 Colo. 311, 203 P.2d 499 (1949). *See also Melo v. National Fuse & Powder Co.,* 267 F.Supp. 611 (D.Colo.1967).

The insurance application, signed by Sanchez and an exhibit in the prior federal case, referred specifically to the conditional receipt and potential temporary insurance. The application provided:

> "I (We) have paid $5,000 to the agent or broker in exchange for the *Conditional Receipt* bearing the same number as this application, and I (we) hereby agree to the conditions thereof." (emphasis added)

The application further provided:

> "[N]o insurance shall take effect unless and until the policy has been manually delivered to and received and accepted by me (us) and the first premium paid dur-

ing the lifetime and good health of the proposed insured (except as provided in *The Conditional Receipt* bearing the same number as this application if a premium has been paid and acknowledged above and such Receipt issued)." (emphasis added)

While the conditional receipt had not been issued to Sanchez, its existence was clearly revealed in a document known to the Sanchez estate prior to the settlement of the federal suit.

Having reached a settlement based on the theory that the permanent insurance policy was in effect, plaintiffs cannot now contend they are entitled to recover on the theory that Sanchez was covered by temporary insurance, which was extinguished when the policy went into effect. To allow recovery here would be to hold that even if the $1,000,000 provided for in the insurance policy had been paid as the result of the prior federal suit, nevertheless, the obligation to pay $300,000 temporary insurance would still exist. The $20,000 settlement, wisely or not, was accepted in lieu of the right to pursue the suit against the insurer for the benefits under the policy.

## II.

Also, I do not believe this to be the proper case in which to adopt and apply the rule of reasonable expectation as the majority has done.

I agree with the trial court's conclusion that when Sanchez' offer to purchase a "rated" policy of insurance was accepted, a contract for permanent insurance was created and the temporary insurance was terminated. In reaching this conclusion the trial court properly relied on *United Savings Life Insurance Co. v. Coulson*, 560 S.W.2d 211 (Tex.Civ.App.1977) and *Novelli-*

*no v. Life Insurance Co. of North America*, 59 Del. 187, 216 A.2d 420 (1966). *See also United Pacific Insurance Co. v. Truck Insurance Exchange*, 273 Or. 283, 541 P.2d 448 (1975); *U & I Properties, Inc. v. Republic Nat'l Life Insurance Co.*, 10 Wash.App. 640, 519 P.2d 19 (1974); *Dunford v. United of Omaha*, 95 Idaho 282, 506 P.2d 1355 (1973).

Here, Sanchez tendered $5,000, which purchased temporary insurance pending a contract for permanent insurance. At this point, he could reasonably have believed he was covered by temporary insurance. Upon acceptance of the contract for permanent insurance, the $5,000 was to be applied to the first annual premium owed. Sanchez was then told he could not be insured as a standard risk, but that he could be insured on a rated basis. He accepted Connecticut General's offer for a rated policy, and tendered $41,300 to cover the remainder of the first annual premium due.

Having done so, Sanchez could believe that he was covered by the rated policy: he had been told he could purchase such a policy, and had tendered the first annual premium. It is difficult to perceive, however, how he could reasonably have believed that he was *also* covered by temporary insurance, since the $5,000 which had purchased temporary coverage had been applied to the permanent insurance policy payment.

The judgment should be affirmed.