James A. LELAND, D.D.S. and Gretchen V. Leland, Plaintiffs-Appellees and Cross-Appellants,

v.

The TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Defendant-Appellant and Cross-Appellee.

No. 83CA0677.

Colorado Court of Appeals, Div. III.

July 18, 1985.

Rehearing Denied Aug. 22, 1985.

Certiorari Denied Jan. 27, 1986.

Prakken, Williams, Coebergh & Jordan, P.C., William D. Prakken, Williams, Turner & Holmes, P.C., Clark S. Spalsbury, Jr., Bernard A. Buescher, Grand Junction, for plaintiffs-appellees and cross-appellants.

Madden & Strate, P.C., William J. Madden, Trevor J. MacLennan, Wheat Ridge, for defendant-appellant and cross-appellee.

BABCOCK, Judge.

Plaintiffs, James A. Leland, D.D.S., and Gretchen V. Leland, brought this action against Travelers Indemnity Company of Illinois (Travelers) to recover personal injury protection (PIP) benefits under a policy issued by Travelers, pursuant to the Colorado Auto Accident Reparations Act (the Act), for attorney fees, interest, and treble damages under the Act, and for compensatory and exemplary damages for "outrageous conduct" and negligence in handling the plaintiffs' claims. Travelers' primary defense was cancellation of the policy.

The parties stipulated to a procedure by which the trial court would determine whether coverage existed under the policy and, if so, whether plaintiffs were entitled to attorney fees, interest, and treble damages under the Act. In addition, the trial court was to rule whether plaintiffs made a prima facie showing on their other claims. If the trial court ruled that a prima facie showing had been made on any other claim, that claim would later be tried to a jury.

Following the first phase of trial, the trial court concluded that Travelers had waived its right to, and was estopped from asserting, cancellation of the policy. The trial court then awarded plaintiffs medical, rehabilitation, wage loss, and loss of motor vehicle benefits in the stipulated sum of $64,625. It denied plaintiffs' claim for es-

sential services benefits in the amount of $780, and also ruled that the plaintiffs were not entitled to recovery of attorney fees, interest, or treble damages under the Act. Finally, the trial court concluded that plaintiffs failed to make a prima facie showing on any claim other than breach of contract, and therefore, dismissed their remaining claims.

Plaintiffs appeal, contending that the trial court erred in denying their claim for attorney fees, interest, and treble damages under the Act and in dismissing their remaining claims. They also assert that the trial court committed prejudicial error by its refusal to compel discovery. On cross-appeal, Travelers contends that the trial court erred in its determination that the PIP policy had not been effectively cancelled. We affirm in part, reverse in part, and remand with directions.

### I.

The following facts are undisputed. On October 9, 1980, plaintiff's independent insurance broker (broker) bound Travelers to a PIP insurance agreement. On January 8, 1981, Travelers issued a six-month policy commencing October 28, 1980, together with a billing statement. This policy and, allegedly, the billing statement were mailed to plaintiffs on January 8, 1981.

The premium was not paid by the February 1, 1981, deadline. On February 23, 1981, Travelers mailed to plaintiffs and to the broker a "notice of cancellation" which showed an effective cancellation date of March 9, 1981. That notice stated:

"Unfortunately, we have not received your payment for the premium due on 02/01/81. Therefore, your policy shown above is cancelled in accordance with its terms effective on the date indicated above, and at the time on which the policy became effective. Any premium adjustments required by the policy will be made. We regret the necessity of this action, and we will be pleased to reinstate this coverage if we receive your payment by the effective date of cancellation. A notice of reinstatement con-

tinuing your coverage will be sent to you when we receive your payment. If you have any questions about your premium payment, please contact your Travelers agent."

In a box headed "premium information" the notice advised of the "premium due" in the "total amount" of $1,059 and stated a due date of March 9, 1981. Below this notice was the heading "detach at the perforation and return the bottom portion with your payment in the enclosed envelope."

Dr. Leland, having sufficient funds in his account, typed a check dated March 5, 1981, in the amount of the premium, and mailed it to Travelers with the payment stub in the envelope provided. Through oversight, he neglected to sign the check.

On March 11, 1981, Travelers returned plaintiff's premium check together with a form letter which said: "Unfortunately, we are unable to process your insurance payment for one of the reasons shown below." Below were a number of boxes. The one checked read: "Signature is missing or incorrect." The form letter concluded: "Please make proper correction and return your payment to us with the bill stub (if available) in the enclosed envelope." Dr. Leland immediately signed and returned the check the day it was received.

Travelers received the signed check from plaintiffs on or before March 20, 1981. On March 23, 1981, Travelers cashed plaintiff's check, issued a refund check in the sum of $299 and returned it to plaintiffs with an attached advisement that: "POLICY CANCELLED OR TERMINATED-RETURN OF UNEARNED PREMIUM ... DEAR CUSTOMER—WE ARE SORRY YOUR POLICY WAS CANCELLED. WE APPRECIATED BEING OF SERVICE TO YOU AND WOULD LIKE THE OPPORTUNITY TO SERVE YOUR INSURANCE NEEDS AGAIN. PLEASE CALL ON US."

On March 25, 1981, before Travelers refund check reached plaintiffs, Dr. Leland was rendered a paraplegic as a result of injuries incurred in an automobile accident.

## II.

Travelers contends that the trial court erred in concluding that it was estopped from asserting cancellation of the PIP policy. We disagree.

■ The doctrine of equitable estoppel provides that when one party by conduct or words leads another to believe in the existence of a certain condition and the other party relies thereon to his detriment, the first party is precluded from asserting against the other that a different condition existed at the time. *First National Bank v. Ulibarri*, 38 Colo.App. 428, 557 P.2d 1221 (1976).

■ The rule of reasonable expectation, a hybrid of the common law doctrine of estoppel, is applicable in this type of dispute concerning the existence of insurance coverage. *See Sanchez v. Connecticut General Life Insurance Co.*, 681 P.2d 974 (Colo.App.1984). As applicable here, that rule provides that an insurer who wishes to avoid liability must not only use clear and unequivocal language evidencing its intent to do so, but it must also call such limiting conditions to the attention of the insured. Absent proof of such disclosure, coverage will be deemed to be that which would be expected by the ordinary layperson. *See Sanchez v. Connecticut Life Insurance Co., supra.*

■ Here, Travelers form letter informed plaintiffs that it was "unable to process your insurance payment" because Dr. Leland's "signature is missing" and directed plaintiffs to "please make the proper correction and return your payment to us ... in the enclosed envelope." The form letter does not contain any notice or advisement that the policy had been terminated effective March 9, 1981, and would not be reinstated in accordance with the February 17, 1981, notice or in accordance with the terms of the policy. Nor is there any indication that the earned portion of the premium would be deducted from the full premium amount and the balance remitted or of a separate billing for a specified amount of earned premium. Travel-

ers' associate director in charge of processing payments testified that there was no reason why such notice could not be included in the form letter.

We conclude that the form letter constitutes conduct which is calculated to convey the impression that the policy would remain in effect, or at least be reinstated if the unsigned check was promptly signed and returned. It further evidences Travelers' intent and expectation that plaintiffs would rely upon its contents and omissions by signing and returning the check for the full premium amount. It is undisputed that Travelers knew or had constructive knowledge of the true facts. *See Aubert v. Town of Fruita*, 192 Colo. 372, 559 P.2d 232 (1977).

The evidence was uncontradicted that plaintiffs lacked actual knowledge that Travelers considered the policy cancelled. Citing *Aubert v. Town of Fruita, supra,* Travelers, however, argues that estoppel cannot apply here because plaintiffs had reasonable means to obtain that information from Travelers or the broker.

The form letter concludes with the address of the "customer services unit, personal lines, Travelers Insurance Company, P.O. Box T.I.C. 4, Hartford, Connecticut 06101, 203–277–6811." However, an ordinary layperson reading the form letter provided by Travelers could reasonably conclude that execution and return of the unsigned check would result in continued or reinstated coverage. Thus, in the absence of clear and unequivocal notice on the form concerning the true status of the policy and the intended disposition of the premium payment, plaintiffs' failure to contract Travelers or the broker was reasonable under the circumstances. *See Sanchez v. Connecticut General Life Insurance Co., supra; Aubert v. Town of Fruita, supra.* Further, Dr. Leland could not have relied reasonably upon the broker because the broker denied that it was Travelers' agent, and there was no evidence that the broker had knowledge or authority to respond to plaintiffs' questions concerning effective coverage.

We hold that Travelers' failure to notify plaintiffs clearly and unequivocally of its cancellation of coverage constituted a course of conduct which led plaintiffs, as ordinary laypersons, reasonably to believe that, by signing and returning the check for the full premium amount, their PIP coverage would remain in effect or be reinstated. Thus, Travelers is estopped from asserting cancellation and, accordingly, from denying liability under the PIP policy. *See Aubert v. Town of Fruita, supra; Sanchez v. Connecticut General Life Insurance Co., supra; see also Klein v. Avemco Insurance Co.,* 289 N.C. 63, 220 S.E.2d 595 (1975).

Because we have determined that Travelers is estopped from denying its liability under the PIP policy, we need not address its contention that the trial court erred in finding a waiver.

### III.

Plaintiffs next assert that the trial court erred in denying their claim for attorney fees and interest under § 10–4–708, C.R.S. We agree.

Section 10–4–708(1), C.R.S., provides:

"Payment of benefits ... *shall* be paid on a monthly basis. Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and the amount of expenses incurred during that period .... In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same. In the event that the insurer is required by such action to pay any overdue benefits, the insurer *shall,* in addition to the benefits paid, be required to pay the reasonable attorney fees incurred by the other party. The insurer *shall* pay interest on the benefits which were in controversy at the rate of 18% per annum, with interest commencing from the date benefits in controversy were due." (emphasis added)

Travelers argues that § 10–4–708, C.R.S., was not enacted for the purpose of permitting an insured to recover litigation expenses from an insurer if the insurer contests coverage in good faith and upon reasonable grounds. It cites no authority for this proposition and we deem it to be devoid of merit.

The General Assembly declared that the Act was passed "to avoid inadequate compensation to victims of automobile accidents." Section 10–4–702, C.R.S. It is to be liberally construed to further its remedial and beneficent purposes. *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Bukulmez v. Hertz Corp.,* 710 P.2d 1117 (Colo.App.1985). We must give effect to this legislative enactment according to its plain and obvious meaning. *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984). The legislative intent and policy behind the Act is to maximize, rather than minimize insurance coverage. *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984).

While this is an issue of first impression in Colorado, other courts have held, in light of these principles, that similar statutes confer on the beneficiary a statutory right to recover reasonable attorney fees and interest, even though payment of benefits under the policy is contested in good faith and upon reasonable grounds. *See Employer's Liability Assurance Corp. v. Royals Farm Supply,* 186 So.2d 317 (Fla.App. 1966); *Dunmore v. Interstate Fire Insurance Co.,* 301 So.2d 502 (Fla.App.1974); *Van Houten v. New Jersey Manufacturers Insurance Co.,* 159 N.J.Super. 208, 387 A.2d 419 (1978); *Simmons v. Government Employees Insurance Co.,* 59 A.D.2d 468, 400 N.Y.S.2d 99 (1977); *Mattice v. Amica Mutual Insurance Co.,* 105 Mis.2d 207, 431 N.Y.S.2d 883 (1980); *Carrillo v. State Farm Mutual Automobile Insurance Co.,* 96 Nev. 793, 618 P.2d 351 (Nev.1981).

Travelers failed to pay benefits to plaintiffs when due. Plaintiffs, as persons entitled thereto, prevailed in this action to recover these overdue benefits. Hence, § 10–4–708(1), C.R.S., clearly and unequivo-

cally requires that, in addition to an award of overdue benefits, the trial court must assess a reasonable attorney fee and interest at the rate of 18% per annum on the benefits from the date due. The trial court's failure to do so was error.

## IV.

Plaintiffs also contend that the trial court erred in failing to award essential services benefits under § 10–4–706(1)(d)(I), C.R.S. We agree.

That statute provides in pertinent part that the insured is entitled to payments for:

"[E]xpenses not exceeding $15 per day which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period commencing the day after the date of the accident and not exceeding an additional 52 weeks."

■ Travelers argues that coverage for essential services must be for expenses actually incurred. We disagree and hold that a beneficiary may be entitled to recover essential services benefits, even though various services may be performed gratuitously. *See Maros v. Transamerica Insurance Co.*, 143 N.J.Super. 307, 362 A.2d 1296 (1976).

■ It was undisputed that Dr. Leland's wife attended dental assistant school and was in fact working as a dental assistant prior to his accident, but that as a result of his injuries, she had to relinquish her employment to care for him. But for his wife's care it would have been necessary to pay wages to a skilled nurse. Clearly such services were essential, and $780 constitutes a reasonable amount therefor.

## V.

Finally, plaintiffs contend that the trial court erred in denying their claim for statutory treble damages pursuant to § 10–4–708(1), C.R.S. (willful and wanton denial of benefits) and their remaining tort claims. They also assert that the trial court erred in denying discovery relevant to these claims. We hold that the trial court erred

in its discovery rulings relevant to these claims and in its dismissal of plaintiff's statutory treble damages claim and remaining tort claims.

Plaintiffs sought but were denied discovery relating to conversations between Travelers' employees and the broker, documents transmitted between Travelers and the broker, conversations of Travelers' underwriting manager with fellow employees, and documents in the possession of the manager. The trial court denied their motion to compel discovery, ruling that the broker and the manager were representatives of Travelers within the meaning of C.R.C.P. 26(b)(3), which precludes disclosure of mental impressions, conclusions, opinions, or legal theories.

*Hawkins v. District Court*, 638 P.2d 1372 (Colo.1982) is dispositive. There it was held that:

"In the case of an insurance company defending a claim and asserting that its reports and witness' statements are trial preparation material under C.R.C.P. 26(b)(3), the insurance company has the burden of demonstrating that the document was prepared or obtained in order to defend the specific claim which already has arisen and, when the documents were prepared or obtained, there was a substantial probability of imminent litigation over the claim, or a lawsuit had already been filed."

■ Hence, the test is whether, in light of the nature of the evidence sought to be discovered and the factual situation of the particular case, the party resisting discovery demonstrates that the evidence was prepared, uttered, or obtained in contemplation of specific litigation. *Hawkins v. District Court, supra.*

■ In the absence of such a showing, the trial court must presume that any documents were prepared or statements were made in the ordinary course of the insurer's business and, therefore, that they are not subject to the special discovery requirements of C.R.C.P. 26(b)(3). Rather, the only requirement for discovery in such

event is that the matter to be discovered is reasonably calculated to lead to discovery of admissible evidence. *Hawkins v. District Court, supra.* And, even if the insurer demonstrates that the requested materials or statements fall within the purview of C.R.C.P. 26(b)(3), plaintiffs may nevertheless obtain discovery upon a showing of substantial need. *Hawkins v. District Court, supra.*

In the present case the trial court denied discovery, ruling merely that the deponents were "representatives" of Travelers. Failure to apply the correct legal standard was prejudicial error because admissible evidence obtained by plaintiffs through discovery might have enabled them to meet their burden of making a prima facie showing on the claims dismissed by the trial court.

The judgment of the trial court in favor of plaintiffs awarding medical benefits, rehabilitation benefits, wage loss, and loss of the motor vehicle in the sum of $64,625, is affirmed. The balance of the judgment of the trial court is reversed and the cause is remanded with directions to: (1) enter judgment in favor of plaintiffs for $780 as essential services benefits; (2) determine upon hearing a reasonable attorney fee pursuant to § 10–4–708(1), C.R.S.; (3) award interest at the rate of 18% per annum on the total PIP benefits from the date due; (4) reinstate plaintiffs' claims for treble damages and other tort claims; and (5) conduct a rehearing upon plaintiffs' motion to compel discovery with findings and conclusions to be entered in accordance with the principles announced in *Hawkins v. District Court, supra.*

STERNBERG and METZGER, JJ., concur.