**REGIONAL BANK OF COLORADO, N.A., Plaintiff–Appellee,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant–Appellant.**

No. 93–1235.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1994.

---

Scott J. Mikulecky of Dufford & Brown, Denver, CO (Russell L. George of Stuver & George, Rifle, CO, with him on the brief), for plaintiff-appellee.

John R. Mann (Frank R. Kennedy on the brief), of Cooper & Kelley, Denver, CO, for defendant-appellant.

Before KELLY and BARRETT, Circuit Judges, and O'CONNOR, Senior District Judge.*

EARL E. O'CONNOR, Senior District Judge.

Appellant St. Paul Fire and Marine Insurance Company ("St. Paul") appeals from a grant of summary judgment in favor of appellee Regional Bank of Rifle ("Regional Bank"). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Regional Bank, the insured, filed an action for a declaratory judgment with respect to coverage and duty to defend on a claim for carbon monoxide poisoning under the comprehensive general liability ("CGL") insurance policy issued by St. Paul's. The policy contained a "pollution exclusion" clause. The case was submitted on cross motions for summary judgment with the following stipulated facts:

1. At all times relevant hereto plaintiff [Regional Bank] had in effect a policy of insurance issued by defendant [St. Paul].....

2. On January 27, 1988, Debra Seibert rented an apartment for occupancy by herself and her minor son from plaintiff. At that time, Debra Seibert was pregnant with her daughter, Brandy Loague. At the time, plaintiff owned this apartment.

3. After sleeping in the above-referenced apartment on the night of January 29, 1988, Ms. Seibert and her son were taken to the Hospital suffering from inhalation of carbon monoxide allegedly emitted from a faulty wall heater in the apartment.

4. As a result of their carbon monoxide inhalation, Ms. Seibert and her son filed Civil Action No. 89–CV–291 against the plaintiff herein in the Garfield County District Court (the "Garfield Action"). This case remains pending.

5. The parties hereto agree that the sole issue to be decided in this case is whether [the subject policy] provides, up to its applicable limits, coverage to the plaintiff for the damages and injuries allegedly suffered by Ms. Seibert, her son and daughter in the Garfield Action. More specifically, the issue before the Court is whether [the subject policy's] Pollution Exclusion (Insuring Agreement 36, pp. 6 and 7 of 13) excludes coverage for the injuries and damages allegedly caused by Ms. Seibert, her unborn daughter and her son's carbon monoxide inhalation. This Exclusion reads, in pertinent part, as follows:

**Exclusions—What This Agreement Won't Cover**

* The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.

**Pollution.** We won't cover bodily injury, property damage or medical expenses that result from pollution at or from:

—your premises;

—a waste site; or

—your work site

\* \* \* \* \* \*

**Pollution** means the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

**Pollutants** mean any solid, liquid, gaseous, or thermal irritant or contaminant, including:

—smoke, vapors, soot, fumes;

—acids, alkalis, chemicals; and

—waste

**Your premises** means any premises you own, rent, lease or occupy. It also includes premises you no longer own, rent, lease or occupy.

Aplt.App. at 7–8.

■ We review the district court's grant of summary judgment *de novo*, *Anaconda Minerals Co. v. Stoller Chemical Co.*, 990 F.2d 1175, 1177 (10th Cir.1993), using the same legal standard employed below, Fed. R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). We must follow Colorado law and interpret the policy as a Colorado court would. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Broderick Inv. Co. v. Hartford Accident & Indem. Co.*, 954 F.2d 601, 606 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992).

■ Under Colorado law, absent an ambiguity, "an insurance policy must be given effect according to the plain and ordinary meaning of its terms." *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990); *see also Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990); *Northern Ins. Co. v. Ekstrom*, 784 P.2d 320, 322 (Colo.1989). "A court may not rewrite an unambiguous policy nor limit its effect by a strained construction. A policy term is ambiguous if it is reasonably susceptible to more than one meaning." *Terranova*, 800 P.2d at 60. Insurance contracts are

not to be technically construed, but are to be "construed as they would be understood by a person of ordinary intelligence." *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo.1993).

■ In *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo.1986), the court referred to the "general rules of construction" of "true" insurance contracts as follows:

If there remains any doubt, the terms should be read in the sense which the insurer had reason to believe they would be interpreted by the ordinary reader and purchaser. The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean.

The scope of an agreement is not to be determined in a vacuum. *Id.* at 990. Rather, the court looks to the reasonable expectations of an ordinary policyholder to give effect to the ordinary and popular meaning of words. *Id.* "The interpretation which makes a contract fair and reasonable is selected over that which yields a harsh or unreasonable result." *Id.*

Moreover, "to benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation." *Broderick Investment Co.*, 954 F.2d at 606 (applying Colorado law); *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991) (interpreting an exclusion for sudden and unexpected pollution).

In construing the policy to provide coverage, the district court did not expressly find the policy ambiguous, but held that the policy did not exclude coverage for injuries sustained by tenants of the Bank who were exposed to carbon monoxide emitted from a faulty heater. The court looked to what coverage a reasonable person in the position of the policyholder would have expected and held that "a reasonable policyholder would expect a CGL policy to give him complete comprehensive coverage, including coverage for home accidents such as this." Aplt.App. at 92. The court reasoned that the broad

interpretation of the exclusion urged by St. Paul's was unreasonable because it would exclude coverage for inhalation of smoke (an irritant) caused by a fire on the premises, but not for burns resulting from that same fire.

■ We need not determine whether the policy is ambiguous in the sense that it is subject to two reasonable interpretations because, regardless of ambiguity, we would reach the same result, i.e., that the incident was covered. If the policy is ambiguous, it is to be construed in favor of coverage. *Broderick Investment Co.*, 954 F.2d at 606.

■ If the policy is not ambiguous, it is to be applied according to the plain and ordinary meaning of its terms, the meaning of which are to be determined in light of the reasonable expectation of an ordinary policyholder. Applying this standard, we conclude that the carbon monoxide emission at issue here was not excluded by the pollution exclusion clause in the policy.

■ Colorado recognizes the reasonable expectation doctrine in insurance contract interpretation. *See, e.g., Nissen*, 851 P.2d at 167–168 (applying the reasonable expectations doctrine in interpreting uninsured motorist exclusion); *Chacon*, 788 P.2d at 752 (construing exclusion for intentional acts in homeowner's insurance policy); *Davis v. M.L.G. Corp.*, 712 P.2d at 989–91 (interpreting waiver in automobile rental insurance policy in light of reasonable expectation of insured); *Peters v. Boulder Ins. Agency, Inc.*, 829 P.2d 429, 433 (Colo.Ct.App.1991) (The rule of reasonable expectations applies if "there is a dispute as to the existence of insurance coverage."); *State Compensation Ins. Fund v. Wangerin*, 736 P.2d 1246, 1248 (Colo.Ct.App.1986) (reasonable expectation doctrine is applicable to "determine the continuing existence of insurance coverage."); *Sanchez v. Connecticut Gen. Life Ins. Co.*, 681 P.2d 974, 977 (Colo.Ct.App.1984) (adopting rule of reasonable expectations in determining coverage under temporary life insurance policy); *Leland v. Travelers Indem. Co.*, 712 P.2d 1060, 1064–65 (Colo.Ct.App.1985) (Rule of reasonable expectation applies to disputes regarding "the existence of insurance coverage."). Thus, the plain and ordi-

nary meaning of the terms of the policy is to be construed in light of the reasonable expectation of an ordinary policyholder.

St. Paul's argues that the application of the reasonable expectation doctrine is only appropriate to interpret ambiguous policies or where estoppel and waiver, *Sanchez*, 681 P.2d 974, or unconscionability, *Davis v. M.L.G. Corp.*, 712 P.2d 985, are involved. We do not read these cases so narrowly. Although *Sanchez* was in the context of a temporary life policy, the court's holding was not couched in terms of estoppel or waiver, but focused on what a "lay-applicant would think he was buying in exchange for the premium." *Sanchez*, 681 P.2d at 977. Similarly, the *Davis* court did not require unconscionability to apply the reasonable expectation doctrine, but described the doctrine of unconscionability as "buttressing" the application of the reasonable expectation doctrine. *Davis*, 712 P.2d at 991.

We believe that the Colorado Supreme Court would apply the rule of reasonable expectations in construing the terms of the policy here, regardless of whether or not the policy was found to be ambiguous. *See Nissen*, 851 P.2d at 168; *Chacon*, 788 P.2d at 752; *Sanchez*, 681 P.2d at 977; *but see, Ohio Casualty Ins. v. Imperial Contractors, Inc.*, 765 P.2d 1060, 1062 (Colo.App.1988) (inferring, without citation to any authority, that the reasonable expectation doctrine does not apply absent an ambiguity).

In *Nissen*, the Colorado Supreme Court quoted Robert E. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971): "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." 851 P.2d at 168. In *Chacon*, the court interpreted an unambiguous policy in light of what "a reasonable person would have understood the contract to mean." Similarly, the Colorado Court of Appeals cited *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1353 (1978), with approval in *Sanchez*, 681 P.2d at 977. The court in *Collister*, 388 A.2d at 1353, stated, "[R]egardless of the ambiguity, or lack there-

of, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid."

St. Paul's argues that the plain and ordinary meaning of the terms used in the pollution exclusion clause excludes coverage for the event in question here, i.e., personal injuries caused by exposure to carbon monoxide emissions. There is little doubt that if the heater malfunction had caused a fire and injured the tenants, there would have been coverage. However, St. Paul's urges that because the malfunction caused carbon monoxide emissions, coverage is excluded by the "absolute" pollution exclusion clause of the policy. St. Paul's argues that carbon monoxide is a gaseous irritant and thus, bodily injury caused by exposure to it on the insured's "premises" was excluded from coverage.

· [8] The interpretation purported by St. Paul's stretches the plain meaning of the policy exclusion. When viewed in isolation, the terms "irritant" and "contaminant" are "virtually boundless, for 'there is no substance or chemical in existence that would not irritate or damage some person or property.'" *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir.1992) (a reasonable policyholder would expect discharge of PCB-laden oil to be excluded by the pollution exclusion clause) (quoting *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463 (D.Kan.1991)). The *Pipefitters* court stated:

> Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or proper-

ty damage, one would not ordinarily characterize these events as pollution.

976 F.2d at 1037. In a similar vein, the court in *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan.1991), observed, "[t]he terms 'irritant' and 'contaminant' ... cannot be read in isolation, but must be construed as substances generally recognized as polluting the environment." They must occur in a setting such that they would be recognized as a toxic or particularly harmful substance in industry or by governmental regulators. *Id.*

The pollution exclusion at issue here excludes coverage for bodily injury and medical expenses caused by pollution on the insured's premises. "Pollutant" is defined as "*any* solid, liquid, gaseous, or thermal irritant or contaminant, including: smoke, vapors, ..., fumes; ..." The terms "irritant" and "contaminant" are not defined in the policy. Webster's New International Dictionary 1197 (3d ed. 1986) defines "irritant" as "tending to produce irritation or inflammation; something that irritates or excites; an agent by which irritation is produced." This somewhat circular definition begs the question. A reasonable policy holder would not understand the policy to exclude coverage for *anything* that irritates. "Irritant" is not to be read literally and in isolation, but must be construed in the context of how it is used in the policy, i.e., defining "pollutant."

While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as "pollution." It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.

AFFIRMED.