ZELL, Trustee, Appellant,

v.

AETNA CASUALTY & SURETY INSURANCE COMPANY et al., Appellees.

[Cite as *Zell v. Aetna Cas. & Sur. Ins. Co.* (1996), 114 Ohio App.3d 677.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69664.

Decided Sept. 26, 1996.

**678**

*McCarthy, Lebit, Crystal & Haiman, David A. Schaefer* and *Charlene R. Mileti,* for appellant.

*Gallagher, Sharp, Fulton & Norman, D. John Travis* and *Gary L. Nicholson; Ulmer & Berne, Charles R. Olsavsky, Jr.; Wiley, Rein & Fielding, Walter J. Andrews, Dale E. Hausman* and *Tanja E. Hens,* for appellees.

---

KARPINSKI, Judge.

Plaintiff-appellant, Sam Zell, trustee, appeals from the judgment of the trial court granting summary judgment in favor of defendants-appellees, United States Fidelity and Guaranty Company ("USF&G") and Aetna Casualty & Surety Insurance Company. On appeal, plaintiff raises two assignments of error which contend that the insurance policies provide coverage to the instant matter and that no valid exclusion exists. For the reasons that follow, we find no merit to these assignments and affirm the judgment of the court below. The relevant facts follow.

Plaintiff is the beneficial owner of the property commonly known as "Reserve Square Apartments" located in downtown Cleveland. TransOhio Savings Bank leases commercial office space in this building. Plaintiff contracted with Mayfair Ohio Company to perform restoration work on the parking garage for the apartment building. Mayfair subcontracted the work to Universal Restoration Inc. Universal, in turn, subcontracted the work to Weathermark Corporation.

In order to perform the restoration work, Weathermark brought raw weather-proofing material to the garage. In April 1990, when the waterproofing material was applied, noxious fumes escaped from the work area and into the area leased by TransOhio Bank. As a result, the bank had to evacuate its customers and employees, some of whom missed work. Plaintiff gave TransOhio a rent credit of $106,237 to compensate the bank for its loss.

Plaintiff filed a complaint against Mayfair and Universal. In this lawsuit, plaintiff alleged that Mayfair and its subcontractor, Universal, allowed noxious fumes to be released from the work area to TransOhio Bank. Summary judgment was granted to plaintiff, but he was unable to execute judgment against either Mayfair or Universal. Thereafter, plaintiff filed a supplemental complaint against USF&G, which insures Mayfair, and Aetna, which insures Universal.

The trial court, without opinion, granted summary judgment for the two insurance companies. Plaintiff timely appealed raising two assignments of error.

"I. The trial court erred in granting defendants-appellees' motions for summary judgment when no exclusions in the insurance policies were applicable."

The issue in the first assignment is whether the two insurance policies issued by USF&G and Aetna provide coverage to Mayfair and Universal for the release of the fumes. Insurance policies are generally interpreted by applying rules of contract law. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88–89. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 462 N.E.2d 403, 406–407. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

In this assignment, plaintiff argues that neither insurance policy contains an exclusion which applies to this matter. More specifically, plaintiff argues that the pollution exclusions found in each policy do not preclude coverage for the insureds. The USF&G Policy contains the following language:

"2. Exclusions.

"This insurance does not apply to:

" * * *

"f. (1) Bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants

" * * *

"(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

"(i) if the pollutants are brought on or to the site or location in connection with such operations

" * * *

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The relevant section of the Aetna Policy follows:

"2. EXCLUSIONS

"This insurance does not apply to:

" * * *

"e. (1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

" * * *

"(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

"(i) if the pollutants are brought on or to the site or location in connection with such operations:

" * * *

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

As a general matter, Ohio courts have held that the language of pollution exclusions nearly identical to those in this case is not ambiguous and can preclude coverage. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096; *W. Am. Ins. Co. v. Hopkins* (Oct. 14, 1994), Clark App. No. CA 3108, unreported, 1994 WL 559005. Accordingly, if the facts of this case correspond to the definitions of the two pollution exclusions, coverage is avoided.

Both of these policies specify that "fumes" are included under the definitions of pollutants. The facts in the record before this court are limited. However, plaintiff's characterization of the fumes in plaintiff's prior lawsuits is highly instructive to the case at bar. In the prior suit, Zell described the fumes that were released into TransOhio Bank as follows:

"In connection with garage restoration work at Reserve Square under the Contract, Mayfair and Mayfair's subcontractor, Universal Restoration, Inc. of Ohio ['Universal'] and its sub-subcontractor, Weathermark Corporation, ['Weathermark'] caused the discharge of noxious fumes into space adjacent to the garage leased to TransOhio Savings Bank ['TransOhio'].

" * * *

"During the performance of the garage work pursuant to the Contract, noxious fumes from the material used in the garage work entered the adjacent leased space of TransOhio through air vents. The fumes permeated the TransOhio

premises and resulted in numerous employee complaints, including light-headedness, headaches, nausea and nose bleeds, and further resulted in employee illnesses and absences." (Zell Motion For Summary Judgment, Consolidated case Nos. 194480, 199533, 212017, at 1, 4.)

TransOhio Bank provided the following description in the prior complaint:

"7. Said construction and renovation efforts have recently resulted, and continue to result, in the discharge of noxious fumes into the building and into the portion of the Premises occupied by TSB, along with other substantial environmental discomforts, including extreme heat and moisture, stale air, and particles in the air.

"8. Said fumes and other discomforts have permeated much of the Premises leased by TSB, and have resulted in numerous and continued employee complaints, including light-headedness, headaches, nausea and nosebleeds, and have further resulted in employee illnesses and absences, all which substantially interfere with both the good health of TSB employees and further interfere with the business operations of TSB. The fumes include both 'gasoline' type odors and 'glue' type odors." (TransOhio complaint, paragraphs 7, 8.)

Plaintiff argues that this exclusion does not apply because the raw waterproofing materials that were brought to the work site were not pollutants. The noxious fumes were the pollutants, and the fumes, plaintiff contends, were not released until the material was applied and, therefore, were not brought to the work site as required by the exclusion. As support for its argument, plaintiff cites *W. Am. Ins. Co. v. Tufco Flooring* (1991), 104 N.C.App. 312, 409 S.E.2d 692, in which a North Carolina appellate court declined to enforce a pollutant exclusion when damage resulted to the plaintiff after fumes from flooring material contaminated commercial chicken meat. In *Tufco*, the court held that a pollution exclusion similar to the exclusion in the case at bar did not apply because, *inter alia*, the flooring material was not a pollutant when it was brought to the work site. The court reasoned that the noxious fumes arose when the product was applied, and canned flooring material was not an "irritant or contaminant."

Two recent cases from other jurisdictions have rejected this argument. In *Am. States Ins. Co. v. Nethery* (C.A.5, 1996), 79 F.3d 473, the Fifth Circuit held that a pollution exclusion barred a claim when a homeowner was injured by fumes from paint and glue brought into the home. In distinguishing the rationale used by *Tufco*, the *Nethery* court stated:

" * * * [N]umerous courts have found substances constituted pollutants regardless of their ordinariness or usefulness. E.g., *U.S. Fire Ins. Co. v. Ace Baking Co.*, 164 Wis.2d 499 [504–505], 476 N.W.2d 280, 283 (Ct.App.1981 [1991]),

review denied, 479 N.W.2d 173 (Wis.1991) (' "Just as 'what is one man's meat is another man's rank poison,' Lucretius, De Rerum Natura, 293 (W.H.D. Rouse trans. 3rd ed. 1947), it is a rare substance indeed that is always a pollutant; the most noxious of materials have their appropriate and non-polluting uses. Thus, for example, oil will 'pollute' water and thus foul an automobile's radiator, but be essential for the engine's lubrication." ')"

Additionally, in *Employers Cas. Co. v. St. Paul Fire & Marine Ins. Co.* (Cal.App.1996) 52 Cal.Rptr.2d 17, the court held a pollution exclusion precluded coverage for fumes that were released when an acetylene torch was used on floor coating. The court applied the exclusion even though the fumes were created at the site and not present when the floor coating was brought to the site.

We agree with the rationale espoused by these two cases and find that the applicable policies exclude coverage. Both policies include under pollutants gaseous irritants such as vapors or fumes. Plaintiff previously admitted that the weatherproofing materials brought to the work site and used by the subcontractors discharged noxious fumes that caused TransOhio employees to be sick. When the material was heated and applied to the surface, the noxious fumes were expelled. In this case, the pollutants were dissolved in the weatherproofing material brought to the work site in a drum and then released as fumes causing damages. We conclude that the broad definition of "pollutants" stated in the insurance exclusion in both the Aetna policy and the USF&G policy applies to the facts of this case; neither policy provides coverage.

"II. The trial court erred in denying plaintiff-appellant's motion for summary judgment in view of the fact that plaintiff-appellant suffered 'property damage' as the result of an 'occurrence,' as defined in the policies issued by defendants-appellees."

Having determined that neither policy provides coverage under the pollution exclusion, we need not address any other exclusions in the policies.

*Judgment affirmed.*

Timothy E. McMonagle, J., concurs.

O'Donnell, P.J., concurs in judgment only.