LONGABERGER CO., Plaintiff,

v.

UNITED STATES FIDELITY
& GUARANTY CO.,
Defendant.

No. C2–96–262.

United States District Court,
S.D. Ohio,
Eastern Division.

June 1, 1998.

Joseph William Ryan, Jr., Porter Wright Morris & Arthur, Columbus, OH, for plaintiff, The Longaberger Company.

Thomas Joe Keener, Keener Doucher Curley & Patterson, Columbus, OH, Frank Winston, Jr., Wiley Rein & Fielding, Washington, DC, for defendant, United States Fidelity and Guaranty Company.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

### I. INTRODUCTION

This case is before the Court on motions for summary judgment filed by both the plaintiff and the defendant. The motions have been fully briefed and are ready for decision.[1]

The plaintiff, Longaberger Co. (Longaberger) brings this action against the defendant, United States Fidelity & Guaranty Company (USF & G), for declaratory judgment seeking to determine the defendant's obligations under a commercial general liability insurance policy. Specifically, Longaberger is seeking a declaratory judgment requiring USF & G to defend and indemnify Longa-

---

1. Both parties have filed supplemental memoranda with citation to and discussion of recent authority. The Court has considered these filings in conjunction with the cross-motions for summary judgment.

berger under its commercial general liability policy in connection with an action pending in U.S. District Court in *Lee v. Longaberger Co.*, No. CS–95–825 (S.D.Ohio). That case concerns the discharge of carbon monoxide by a faulty heater in a residential home leased by the plaintiff. The jurisdiction of this Court is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 Both parties have stipulated as to the facts in the case and each has moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

## II. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issue to try." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464,

467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

"The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11[, 103 S.Ct. 2161, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176

(1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in material submitted by the moving party, if pertinent to materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes*, 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

### III. FACTUAL BACKGROUND

1. Longaberger owns and maintains a number of commercial and residential properties in Dresden, Ohio.

2. One such property owned by Longaberger, a single-family, two-story, residential property located at 307 Chestnut in Dresden, Ohio (the "property"), was leased by Longaberger to Janet Lee in June 1993. Ms. Lee thereafter lived in this property with her three children—Jeffrey Lee, David Lee, and Michael Lee.

3. In February 1994, Ms. Lee complained to Longaberger of moisture on the walls of the property. Longaberger made repairs to the property's roof. Notwithstanding these repairs, a water problem apparently persisted.

4. Upon further investigation, Longaberger determined that the water on the walls of the property was the result of condensation. Accordingly, Longaberger employees installed a "power vent" in the brick chimney of the property to vent exhaust from the natural gas furnace in use at the property.

5. Even after the power vent was installed, the condensation problem allegedly continued. On February 28, 1994, a Longaberger employee inspected the property, and determined that the chimney chase had collapsed and thus rendered the power vent inoperable. Longaberger employees attempted to address the situation by venting furnace gasses through the wall of the property. After the furnace gasses were vented through the wall of the property, the condensation problem lessened.

6. On March 2, 1994, at the request of Ms. Lee, Columbia Gas Company ("Columbia Gas") inspected the furnace at the property. Ms. Lee contends that Columbia Gas found that carbon monoxide was being released into the property as a result of a problem with the furnace.

7. On March 4, 1994, Longaberger employees installed a new furnace at the property.

8. On March 7, 1994, Ms. Lee, for the first time, notified Longaberger that she and her three sons were allegedly suffering from carbon monoxide poisoning.

9. On or about July 20, 1994, Longaberger notified USF & G of the claims presented by Ms. Lee and her children. Longaberger demanded that USF & G state its coverage position with respect to the Lee's claims under a commercial general liability insurance contract, numbered 1MP30058285401, which covered the period for September 30, 1993 to September 30, 1994.

10. The insurance contract number 1MP30058285401 between USF & G and Longaberger at issue in this matter contains

the following language under the "Exclusions" section:

2. Exclusions.

This insurance does not apply to:

＊　　＊　　＊　　＊　　＊　　＊

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(I) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor of subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(I) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

"Pollutants" are defined in the contract as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

11. On July 25, 1994, USF & G notified Longaberger that it was conducting an investigation of Ms. Lee's claims under a reservation of rights. Based on that investigation, on October 28, 1994, USF & G sent Longaberger a letter disclaiming coverage for the claims presented by Ms. Lee and her children based on, *inter alia*, the pollution exclusion. Thereafter, Longaberger asked USF & G to reconsider its coverage position. On November 8, 1994, USF & G reiterated its disclaimer of coverage.

12. On August 21, 1995, Ms. Lee and her sons brought a lawsuit against Longaberger alleging bodily injuries resulting from exposure to carbon monoxide fumes released from the furnace into the property. This lawsuit is captioned *Lee v. Longaberger Co.*, No. CS–95–825 (S.D.Ohio). The *Lee* complaint alleges that "the furnace and surrounding pipes and air ducts and other mechanical appliances in the premises ... were negligently installed, serviced and/or maintained by [Longaberger.]" *Lee* Complaint ¶ 5. The *Lee* complaint also alleges that "[a]s a direct and proximate result of the negligence of [Longaberger] ... [Ms. Lee and her children] suffered carbon monoxide poisoning causing severe and permanent neurologic and other injuries." *Id.* ¶¶ 7, 11. The alleged carbon monoxide fumes purportedly were released from "property owed by Defendants [Longaberger]." *Id.* ¶ 4.

13. USF & G received notice of the *Lee* lawsuit on or around September 11, 1995. At that time, Longaberger renewed its demand for a defense and indemnity from USF & G.

14. Upon review and analysis of the *Lee* complaint, and upon further investigation, USF & G once again determined that it had no duty to defend or indemnify Longaberger for these claims. USF & G notified Longaberger that it would continue to disclaim coverage by letter dated September 19, 1995. This disclaimer of coverage was based, *inter alia*, on the pollution exclusion contained in the insurance contract issued by USF & G to Longaberger.

15. The parties agree that USF & G has handled this claim and lawsuit in good faith.

## IV. ISSUE

The material facts are not in dispute, and the only issue is whether, under the law applicable in this action, the pollution exclusion provisions of the instant contract in question are or are not applicable to the undisputed facts. By filing cross-motions for summary judgment the parties are in agreement that the issue is one of law and that summary judgment is appropriate. Fed. R.Civ.P. 56(c).

## V. THE CONTROLLING LAW

The parties are in agreement that, in this diversity action, the controlling law is the law of Ohio.

## VI. THE LAW OF OHIO REGARDING INTERPRETATION AND APPLICATION OF INSURANCE POLICIES' PROVISIONS

The law of Ohio, and elsewhere, is well settled that when language in an insurance policy is ambiguous, the language is to be construed in the way that is most favorable to the insured, but if the language is clear and not ambiguous the plain language must be applied. In a case also involving a pollution exclusion provision in a policy, the Sixth Circuit in *Park–Ohio Industries, Inc. v. The Home Indemnity Company*, 975 F.2d 1215, 1218 (6th Cir.1992), said:

> In Ohio, an insurance policy is a contract, and the parties' rights under the policy are purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061, 1062 (1984) (per curiam). Both parties agree that under Ohio law, where a provision excluding coverage in an insurance policy is clear and unambiguous, the plain language of the exclusion provision applies. See *Moorman v. Prudential Ins. Co. of Am.*, 4 Ohio St.3d 20, 445 N.E.2d 1122, 1124 (1983) (per curiam); *United States v. A.C. Strip*, 868 F.2d 181, 185 (6th Cir.1989). Moreover, both parties also agree that where a provision is ambiguous, the provision is interpreted in favor of the insured. *Id.* In this case, the primary dispute is whether an ambiguity exists in the pollution exclusion in question.

As plaintiffs correctly assert, the burden is on the insurer to prove that a particular claim is precluded by an exclusion provision. *State Farm Fire & Casualty Co. v. Hiermer*, 720 F.Supp. 1310, 1314 (S.D.Ohio 1988), *aff'd*, 884 F.2d 580 (6th Cir.1989) (unpublished); *see also Moorman*, 445 N.E.2d at 1124 ("[W]here exceptions ... are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.").

As in *Park–Ohio*, the primary dispute in the present case is whether an ambiguity exists in the pollution exclusion in question.

## VII. DISCUSSION

Plaintiff contends that the exclusion's definition of "pollutants" is so broad in its inclusion of any "irritant or contaminant" that it would include "substances not commonly viewed as 'pollutants' and releases not commonly viewed as causing 'pollution.'" (Plaintiff's memorandum in support of plaintiff's motion for summary judgment, p. 5). And, therefore, "pollutants 'should be interpreted as referring only to irritants or contaminants which cause damage to the environment.'" (*Id.* at p. 6). Plaintiff relies heavily on decisions in other circuits, including *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir.1992); *Regional Bank of Colorado v. St. Paul Fire and Marine*, 35 F.3d 494 (10th Cir.1994) and *Stoney Run Company v. Prudential–LMI Commercial Ins. Co.*, 47 F.3d 34 (2d Cir.1995).

In the *Pipefitters* case, the Seventh Circuit questioned the need to limit the term "pollutants" because this broad definition of including all "irritants" and "contaminants" could, hypothetically, lead to what the Court felt would be absurd results (*e.g.* bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano; bodily injury caused by an allergic reaction to chlorine in a public pool). The Court noted that decisions have varied over whether similar pollution clauses should be so restricted, but found that it was not necessary to determine in that case whether such a restriction should apply because the pollution in that case—the

spillage on the premises of 80 gallons of oil contains PCB's—was clearly "pollution." In so finding, the Court, citing Illinois and Missouri cases, held that "The copy of International's pollution exclusion is governed by the expectations of a reasonable policyholder ... and a reasonable policyholder would have to expect that the discharge of PCB's at the Arnst site was pollution." *Id.* at 1044.

The dictum of the *Pipefitters* case was cited by the Tenth Circuit in *Regional Bank of Colorado v. St. Paul Fire and Marine Insurance Company,* 35 F.3d 494 (10th Cir. 1994), a case which is factually very similar to the present case. There, as here, a plaintiff filed an action against the owner of a residence due to injuries resulting from inhalation of carbon monoxide emissions. The owner of the premises sought a declaratory judgment with respect to its coverage under a comprehensive general liability policy which contained a pollution exclusion provision with the same definition of pollutants contained in the policy at issue in the present case. In affirming the summary judgment of the District Court in favor of the owner of the premises, the Tenth Circuit applied the law of Colorado. The law of that state recognized that, absent an ambiguity, the insurance policy must be given effect according to the plain and ordinary meaning of its terms and cannot be rewritten by the court. The Tenth Circuit also held, however, that "Colorado recognizes the reasonable expectation doctrine in insurance contracts." *Id.* at 497. The District Court did not find the language of the policy ambiguous nor did the Court of Appeals. It expressly made no determination as to whether the language was ambiguous, finding that, regardless of ambiguity, the same result would be reached. If the policy is ambiguous, it should be construed in favor of coverage and if not ambiguous, the policy:

> [i]s to be applied according to the plain and ordinary meaning of its terms, the meaning of which is to be determined in light of the reasonable expectation of an ordinary policyholder. Applying this standard, we conclude that the carbon monoxide emis-

sion at issue here was not excluded by the pollution exclusion clause in the policy.

*Id.*

The Tenth Circuit believed that the Colorado Supreme Court would apply the rule of reasonable expectations in construing the terms of the policy, regardless of whether or not the policy was found to be ambiguous. It cited the Supreme Court of Colorado's quote from *Keeton, Basic Text on Insurance Law* in *State Farm Mutual Auto. Insurance Company v. Nissen,* 851 P.2d 165, 168 (Colo. 1993) as follows:

> The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.[2]

*Regional Bank of Colorado,* 35 F.3d at 497.

The Tenth Circuit concluded:

> While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctions as "pollution." It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.

*Id.* at 498.

*Stoney Run* also involved carbon monoxide death or injuries and an action for declaratory judgment by the property owner regarding its coverage under a policy containing the same pollution exclusion clause. The Second Circuit, applying New York law, found that the New York courts had construed pollution clauses as applying only to environmental pollution. The Court noted that under New York law any ambiguity is to be construed against the insurer, particularly when the

**2.** "The reasonable expectations doctrine applies irrespective of whether the language in the policy is ambiguous—it simply asks: 'Would a reasonable insured in this position expect coverage?'"

*Hamel, The 1970 Pollution Exclusions in Comprehensive General Liability Policies: "Reason for Interpretations In Favor of Coverage in 1996 and Beyond." Duquesne Law Review,* Summer 1996.

ambiguity is in an exclusionary clause; that an exclusionary clause can be ambiguous in one context and not another; and that the tests applied are "common speech" and the "reasonable expectation and purpose of the ordinary businessman." *Stoney Run,* 47 F.3d at 37. The Court concluded:

We need not decide the precise scope of the pollution exclusion clause contained in Plaintiffs' policies. Instead, we need only determine whether the clause is ambiguous as applied to the facts of this case and subject to no other reasonable interpretation than the one advanced by Prudential. As noted above, the pollution exclusion clause can be reasonably interpreted as applying only to environmental pollution. A reasonable policy holder might not characterize the escape of carbon monoxide from a faulty residential heating and ventilation system as environmental pollution. Accordingly, we find the pollution exclusion clause ambiguous as applied to the Gruner and Schomer actions.

Because the pollution exclusion clause is ambiguous as applied to the facts presented, we reverse the judgment of the district court to the extent that it granted Prudential's motion to dismiss the Gruner and Schomer actions.

*Id.* at 39.

██ It is plaintiff's position that the exclusion clause should be viewed as applying only to environmental damage caused by the release of toxic or hazardous waste into the environment, the purpose of the clause being to exclude governmental clean up costs from coverage, and that it should not apply in the context of facts like those involved in the present case. There is some support for this position in certain decisions by state courts in other jurisdictions. *See, e.g. Thompson v. Temple,* 580 So.2d 1133 (La.App.1991), *Technicon Electronics Corp. v. American Home Assur. Co.,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989); *West American Insurance Co. v. Tufco Flooring East, Inc.* 104 N.C.App. 312, 409 S.E.2d 692 (N.C.App. 1991); In Ohio, this purpose was also alluded to in *Owens–Corning Fiberglas Corp. v. Allstate Ins. Co.,* 74 Ohio Misc.2d 144 660 N.E.2d 746 (C.P. Lucas Co.1993), after the

Court had found the language of the pollution exclusion clause involved in that case to be ambiguous as to whether the release of asbestos "inside or surrounding buildings" is a release of an "irritant" or "contaminant" into the "atmosphere."

Not surprisingly, it is the defendant's position that the language of the pollution exclusion clause is unambiguous in that it clearly and specifically excludes coverage arising from the release or escape of pollutants at any premises owned by the insured and that pollutants are defined to include any gaseous irritant or contaminant, including "vapor" and "fumes." It cites a number of Ohio cases supporting the argument that the pollution exclusion language is unambiguous and must be enforced, including *Zell v. Aetna Cas. & Sur. Co.,* 114 Ohio App.3d 677, 683 N.E.2d 1154 (1996); *West American Ins. Co. v. Hopkins,* No. CA 3108, 1994 WL 559005 (Ohio Ct.App. Oct. 14, 1994); *Manufacturers Gasket Co. v. Transcontinental Ins. Co.,* No 1:92OV 1961 (N.D.Ohio 1992); *Snyder Concrete Prods. Inc. v. Firemen Fund Ins. Co.,* No. 89–4384 (Ohio Ct.C.P. July 15, 1991). In *Zell,* a case involving virtually the same language as the policy in the present case, the Ohio Court of Appeals said:

As a general matter, Ohio courts have held that the language of pollution exclusions nearly identical to those in this case is not ambiguous and can preclude coverage. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992); *West American Ins. Co. v. Hopkins,* (Oct. 14, 1994), Clark App. No. CA 3108, 1994 WL 559005, unreported.

*Zell,* 683 N.E.2d at 1156.

Defendant also cites cases in other jurisdictions in which similar pollution exclusion clauses have been applied to exclude coverage in carbon monoxide cases. *Bernhardt v. Hartford Fire Ins. Co.,* 102 Md.App. 45, 648 A.2d 1047 (Md.Ct.Spec.App.1994); *Reliance Ins. Co. v. VE Corp.,* No. 95–538, 1995 WL 560024 (E.D.Pa.1995); *Essex Ins. Co. v. Tri–Town Corp.,* 863 F.Supp. 38 (D.Mass.1994).

Of greater significance than decisions by courts in other jurisdictions is the decision by the Sixth Circuit in *Park–Ohio, supra,* a case heavily relied upon by defendant in the pres-

ent case. In *Park–Ohio* the plaintiff, insured under a comprehensive general liability policy which covered Park–Ohio and its subsidiary, Tocco, Inc. sought a declaratory judgment that Home Indemnity had a duty to defend and indemnify Tocco against all claims asserted against it in a product liability action arising from injuries and deaths that occurred when workers breathed smoke and fumes resulting from using induction furnaces manufactured by Tocco. The action was governed by Ohio law and the Sixth Circuit affirmed a summary judgment by the district court in favor of Home Indemnity based upon the pollution exclusion clause in the insurance policy.

In *Park–Ohio*, the pollution exclusion clause stated that the policy did not cover:

> ... bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

*Park–Ohio*, 975 F.2d at 1217.

The issue in *Park–Ohio* was not whether the clause was ambiguous with regard to whether this language included the release of smoke into the atmosphere from the use of plaintiff's furnaces to burn rubber, and the Sixth Circuit had no difficulty in finding that there "is no ambiguity in this situation." *Id.* at 1219. Instead, the issue in *Park–Ohio* was whether there was ambiguity in the clause due to the question of whether it should apply only when the insured itself was actively involved in polluting the environment, as an oil tanker dumping oil in the ocean or a chemical company emitting toxins from its plant. A majority of the Court held that the clause made no distinction between active polluters and passive polluters and that under Ohio law the court would not look outside the clear and plain language of the pollution exclusion clause.

While *Park–Ohio* can be distinguished in terms of the ambiguity issue · before the Court in that case, it is a significant decision because it represents Sixth Circuit law dealing with a pollution exclusion clause and the

application of Ohio law. The conclusions reached by the majority are, of course, binding on this court and they include:

■ 1. Under Ohio law an exclusion clause can be unambiguous when applied to certain facts but ambiguous when applied to other facts, a concept referred to by the Sixth Circuit as the concept of latent ambiguities. Although the Court found that "... Ohio embraces the concept of latent ambiguities in an insurance contract," it found no ambiguity in the exclusion language applied to the undisputed facts of that case. *Id.* at 1219.

■ 2. The fact that other jurisdictions have interpreted similar provisions to be ambiguous is not a basis for finding, as a matter of law, that the provision under consideration is ambiguous. To so hold "would be rejecting a well-settled Ohio rule of construction to apply the plain language of the contract where that language is clear and unambiguous." *Id.* at 1220.

■ 3. "Ohio has rejected the reasonable expectation doctrine." *Id.* at 1223. The court relied on the following language which appears in *Sterling Merchandise Co. v. Hartford Ins. Co.* 30 Ohio App.3d 131, 506 N.E.2d 1192, 1197 (1986):

> ... the reasonable expectation doctrine requires a court to rewrite an insurance contract which does not meet popular expectations. Such rewriting is done regardless of the bargain entered into by the parties to the contract. Such judicial activism has not been adopted in Ohio by its courts and the courts' use of the liberal rules of construction. Further, this court declines to do so.

The Sixth Circuit found this decision persuasive:

> Although *Sterling* is not a decision by the Supreme Court of Ohio, *Sterling* is persuasive when considered in conjunction with well-settled Ohio rules of construction. See also *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble*, 924 F.2d 633, 639–640, n. 8 (7th Cir.1991) ("The reasonable expectations doctrine has been soundly rejected by Ohio courts....").

Accordingly, we believe that if the Supreme Court of Ohio were faced with the same issue as we are today, it would reject the reasonable expectation doctrine.

*Id.* at 1223

In this Court's view, the question of whether Ohio has rejected the reasonable expectations doctrine is not one that is totally free of doubt. A District Court, after a thorough review of Ohio law, reached a contrary conclusion in *Owens–Illinois, Inc. v. Aetna Casualty and Surety Company,* 597 F.Supp. 1515, 1521 (D.D.C.1984).

> Finally, Ohio courts also utilize the reasonable expectations doctrine embodied in *Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir. 1981), *see e.g., Sommer v. General Insurance Co.,* 22 Ohio App.2d 149, 155, 259 N.E.2d 142, 146 (1970) (to deny insured right to adduce proof would defeat "the reasonable expectations of coverage of the purchaser"); *Carpenter v. Gasper,* 116 Ohio App. 45, 48, 186 N.E.2d 481, 484 (1962) (must consider what a reasonable person in the position of the insured would have expected); *Brescoll v. Nationwide Mutual Insurance Co.,* 116 Ohio App. 537, 541, 189 N.E.2d 173, 175 (1961); *Carter v. Bernard,* 27 Ohio Misc. 165, 168, 269 N.E.2d 139, 141 (Ohio Com.Pl.1971) (any doubtful language should be construed most strongly against the surety and in favor of the indemnity which the insured had reasonable ground to expect); *Wagner v. Nationwide Mutual Insurance Co.,* 14 Ohio Misc. 220, 222, 235 N.E.2d 741, 743 (Ohio Com.Pl.1968) (presumption that the insurer intended the insured to understand that he would be protected to the full extent that any fair interpretation would allow).

Regardless of the Court's analysis of Ohio law in the *Owens–Illinois* case, this Court is, of course, obligated to follow and apply the analysis of Ohio law as set forth by the Sixth Circuit in the *Park–Ohio* case.

■ It is not disputed in the present case that "the Ohio legislature, Ohio regulatory agencies and Ohio courts have all recognized that carbon monoxide is a harmful and toxic gas." (Defendant's memorandum in support

of motion for summary judgment, p. 8; plaintiff's memorandum in opposition to defendant's motion for summary judgement, p. 5). Nor can it be denied that a literal reading of the pollution exclusion clause would include carbon monoxide within the definition of "pollutants" as being a "gaseous, irritant or contaminant, including . . . vapor, . . . [and] fumes." Instead, the thrust of plaintiff's argument is that the definition is so broad that it would include substances not causing "pollution", as that term is commonly viewed, and thus there is an ambiguity as to whether the word "pollutants" is meant to include only cases in which there has been a release of substances causing the type of environmental damage often associated with industrial pollution. As succinctly stated in plaintiff's memorandum in opposition to defendant's motion for summary judgement:

> Specifically, Longaberger claims that (1) the exclusion is ambiguous as applied to releases of substances which do not cause environmental damage, and (2) the release of carbon monoxide into a home by a residential heater is not a release which causes environmental damage.

(Plaintiff's memorandum in opposition to defendant's motion for summary judgment, p. 2.)

The problem with plaintiff's argument, in the view of this Court, is that it rests essentially on what a reasonable person would expect the pollution exclusion clause to include, *i.e.* pollution of a type causing environmental damage. As plaintiff states, "Put simply, this Court must interpret the definition in a way that gives effect to the connotation of environmental damage found in the word 'pollutants.' " (*Id.,* pg. 4). If this Court were free to do so, it would find merit in plaintiff's argument. It is not a question, however, of this Court's personal view of whether "pollutants" should be so interpreted. As the Court said in *American States Insurance Company v. Nethery,* 79 F.3d 473, 476 (5th Cir.1996).

> Whether the policy definition comports with this court's notion of the usual meaning of "pollutants" is not the issue; this court has no special expertise in writing

insurance policies. Our judgment about the reasonable scope of a pollution exclusion—in the absence of ambiguity—must be tied to the language of the policy.

While the Court's personal interpretation is not the issue, the Court, were it free to do so, would find merit in the application of the doctrine of reasonable expectations. A reasonable person obtaining the insurance policy in this case "would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable." *Regional Bank,* 35 F.3d at 498. This Court finds the reasoning of the *Regional Bank* and *Stoney Run* cases involving as they do factual scenarios very similar to that in the present case, persuasive, but they largely rest on the doctrine of reasonable expectations under the laws of other states—a doctrine that the Sixth Circuit has held is not recognized in Ohio.

The Court reaches the conclusion that under the law of Ohio the language of the exclusion clause is not ambiguous—it clearly covers the emission of carbon monoxide gas on the premises of the insured, and the Court's inquiry must necessarily end at that point absent an ability to apply the doctrine of reasonable expectations.

For the above reasons, the plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**