JOURNAL ENTRY AND OPINION
Defendant-appellant Indiana Insurance Company (Indiana) appeals from the granting of summary judgment in favor of defendants-appellees Highland House Company (Highland House) and Renaissance Management, Inc. (RMI)[1], thereby requiring Indiana to provide insurance coverage pursuant to a policy of insurance.[2] For the reasons adduced below, we reverse the judgment of the trial court and remand for further proceedings.
A review of the record on appeal indicates that on March 7, 1997, Daniel Wojtala sustained bodily injuries, and Lisa Anderson died, after inhaling carbon monoxide fumes emanating from a defective heating unit within an apartment owned by Highland. Thereafter, three separate cases were filed. The first action was Georgene M. Anderson, etc. v. Highland House Company, et al., Cuyahoga County Common Pleas Court Case No. 332211, in which the estate of Lisa Anderson sued Highland and RMI alleging a claim for wrongful death. Highland and RMI named Mr. Wojtala as a third-party defendant in case number 332211. The second action was Indiana Insurance Co. v. Herbert Chisling, et al., Cuyahoga County Common Pleas Court Case No. 339629. The third action is the case sub judice, Cuyahoga County Common Pleas Court Case No. 339657. The second and third actions both sought a declaratory judgment regarding Indiana's duty to defend and indemnify its insureds, Highland and RMI.
In pertinent part, the insurance policies issued to Highland and Mr. Chisling state the following:
SECTION I — COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
* * *
2. EXCLUSIONS.
This insurance does not apply to:
* * *
f. Pollution.
 (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
 (a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
* * *
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
The umbrella policy language provides, in pertinent part, the following:
SECTION I — COVERAGE
* * *
C. EXCLUSIONS
1. This insurance does not apply:
* * *
 g. (1) To Bodily Injury, Personal Injury, * * * which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time.
* * *
SECTION V DEFINITIONS
* * *
 (N) Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
In the action sub judice, Highland and RMI filed a motion for summary judgment on the issue of insurance coverage, arguing that the policy language relative to Pollution Exclusion was ambiguous and should be limited to environmentally-related losses. Subsequent to opposition briefs being filed by Indiana which relied upon policy language excluding pollution, the trial court granted summary judgment in favor of Highland and RMI on December 8, 1998, concluding that the policy language contained in the pollution exclusion was ambiguous and that the Indiana insurance policies provided coverage for the claims of Anderson and Wojtala brought against Highland and RMI.[3]
This timely appeal by Indiana presents seven (7) assignments of error for review. Since these assignments all argue the use of summary judgment as it relates to construction of the insurance policies at issue, the assignments will be discussed jointly. These seven assignments state the following:
 1. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE THE POLLUTION EXCLUSIONS IN THE INDIANA INSURANCE COMPANY POLICIES BAR COVERAGE FOR THE CLAIMS OF THE ESTATE OF LISA MARIA ANDERSEN AND DANIEL WOJTALA.
 2. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE THE POLLUTION EXCLUSION CONTAINED IN THE INDIANA INSURANCE POLICIES IS CLEAR AND UNAMBIGUOUS.
 3. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE IT IMPROPERLY CONSIDERED EVIDENCE WHICH WAS NOT A PART OF THE RECORD IN THIS CASE.
 4. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE IT IMPROPERLY RELIED ON THE REASONABLE INSUREDS EXPECTATIONS DOCTRINE.
 5. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE INDIANA INSURANCE POLICIES 42-152-896 AND 14-120-397 DO NOT PROVIDE ANY COVERAGE FOR ANY PARTY AGAINST WHOM THE ESTATE OF LISA MARIE ANDERSEN AND DANIEL WOJTALA MADE CLAIMS.
 6. THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT TO APPELLANT INDIANA INSURANCE COMPANY AND DETERMINING THAT ITS POLICIES OF INSURANCE WERE INAPPLICABLE TO THE CLAIMS OF THE ESTATE OF LISA MARIE ANDERSEN AND DANIEL WOJTALA AGAINST HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC.
 7. ALTERNATIVELY, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES HIGHLAND HOUSE COMPANY AND RENAISSANCE MANAGEMENT, INC. BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT.
The standard of review relative to a summary judgment ruling was recently stated by this court:
 The standard for granting a motion for summary judgment is set forth in Civ.R. 56(C).
 In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein(1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; Welco Industries, Inc. v. Applied Cas. (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; Osborne v. Lyles (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.
 A motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992), 82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46.
 In Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C).
Id. at 298, 662 N.E.2d 264.
 The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; Howard v. Willis (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
Tagliarina v. Tumino (Oct. 28, 1999), Cuyahoga App. No. 74962, unreported, 1999 WL 980597, at 2-3.
In construing a contract of insurance, we note the following:
 Where the terms of an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction. Santana v. Auto Owners Ins. Co. (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308, appeal dismissed (1994), 69 Ohio St.3d 182, 631 N.E.2d 123. When the policy terms have a plain and ordinary meaning, it is not necessary or permissible for a court to construe a different meaning. Ambrose v. State Farm Fire Cas. (1990), 70 Ohio App.3d 797, 800, 592 N.E.2d 868, jurisdictional motion overruled (1991), 60 Ohio St.3d 709, 573 N.E.2d 671. In other words, the plain meaning of unambiguous language will be enforced as written. Mehl v. Motorists Mut. Ins. Co. (1992), 79 Ohio App.3d 550, 554, 607 N.E.2d 897.
Nationwide Mut. Ins. Co. v. Finkley (1996), 112 Ohio App.3d 712,715.
Additionally, we also note the following:
 Insurance policies are generally interpreted by applying rules of contract law. Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34, 508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none.
Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 166-167, 462 N.E.2d 403.
 If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 474 N.E.2d 271.
Progressive Ins. Co. v. Heritage Ins. Co. (Cuyahoga, 1996),113 Ohio App.3d 781, 784-785.
In reaching its conclusion that the policy language was ambiguous, the trial court stated the following in its final order, at 4-6:
 In order to find in favor of coverage, this Court must first determine that the policy is ambiguous. This necessarily requires the Court to consider the key words of the exclusion such as `pollution' and `discharge, dispersal, seepage, migration, release, or escape.' After reviewing the case law cited by both parties, this Court is of the opinion that these words are in fact open to more than one reasonable interpretation in light of the fact that these words are recognized environmental terms of art. See West American Ins. Co. v. Tufco Flooring East, Inc. (1991), 104 N.C. App. 312, 332-324, 409 S.E.2d 692, 698-699. Indeed, all of these terms may reasonably be construed as referring to environmental concerns such as the contamination of common air and water on a relatively large scale and not truly to concerns of faulty heaters in the confines of a residential apartment unit. See Stoney Run Co. v. Prudential-LMI Commercial Ins. Co. (1995), 47 F.3d 34, 37.
 In light of the apparent ambiguity in the language of the exclusion, this Court is therefore called upon to define the term `pollutant.' In so doing, it is valuable to initially examine the history of the term as used in the insurance industry for purposes of these types of exclusions. Indeed, it is the view of this Court that the historical context within which these types of exclusions were fashioned cannot be divorced from the bare language of the exclusion itself when attempting to give the exclusion meaning.
 Additionally, this Court must strictly construe the exclusion in favor of the insured and against the insurer.
 The evidence in this matter has established that clauses like the one at issue were first introduced into policies of insurance in the 1970's as a direct result of the concerns of insurers that their policies, as written at that time, did not adequately or properly address the problems associated with the environment and the pollution thereof.
 These concerns were borne out of society's developing awareness and concerns regarding the environment and large scale industrial pollution. Thus, by inserting pollution exclusions into their policies, insurers limited their duty to pay increasingly frequent and potentially costly environmental claims while simultaneously demonstrating to the public that the industry did not condone and would not indemnify those companies that chose to pollute the environment. Clearly, the industry neither intended nor desired that the exclusion operate in cases such as this.
 Additionally, it is apparent that the average policy holder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollutants and not as applying to every possible irritant or contaminant imaginable. See Regional Bank of Colo., N.A. v. St. Paul Fire and Marine Ins. Co., (10th Cir. 1994), 35 F.3d 494
(stating that an ordinary policy holder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as `pollution'). Thus, construing the policy exclusion as applying only to environmental pollution no doubt gives effect to the reasonable intent of the parties when they entered into the insurance contract in this case.
 Therefore, in accordance with the foregoing, this Court holds that the pollution exclusion at issue applies only to environmental discharge of traditionally environmental pollutants and not to cases involving exposure to carbon monoxide produced by a defective heating unit inside of a residential apartment unit. Summary Judgment is granted as to the issue of coverage, and Indiana must provide coverage in this instance.
IT IS SO ORDERED on this 2d day of December, 1998"
Turning our attention to case law interpreting similarly phrased pollution exclusion clauses, we note that standard pollution exclusions virtually identical to the policy exclusion in this case, which themselves deny coverage for injuries arising from the discharge, dispersal, seepage, migration, release and/or escape of pollutants, have been determined to be unambiguous and enforced to deny policy coverage. See Longaberger v. U.S. Fidelity Guar. Co.(S.D.Ohio, 1998), 31 F. Supp.2d 595 (applying Hybud, infra., the district court determined that carbon monoxide released into a home by a residential heater was a pollutant precluding coverage under a policy exclusion which defined pollutants as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.); Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657,658 (pollution under the policy includes smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants * * *); Zell v. Aetna Cas. Sur. Ins. Co. (Cuyahoga, 1996), 114 Ohio App.3d 677
(Karpinski, J., with McMonagle concurring, and O'Donnell concurring in judgment only) (noxious fumes from weatherproofing material applied to parking lot surface, which seeped into adjacent building basement, determined to be pollutants under policy exclusion language which defined pollutants as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.); Air Prods. Chems. v. Indiana Ins. Co. (Dec. 23, 1999), Hamilton App. Nos. C-980947 and C-990009, unreported, 1999 Ohio App. LEXIS 6217 (methane gas, which seeped through cracks in a building foundation and accumulated in the building, considered a gaseous contaminant to the air in the building precluding coverage under a pollution exclusion which defined pollutants as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.); Owners Ins. Co. v. Baljit Singh dba Singh Enterprises (Sept. 21, 1999), Richland App. No. 98-CA-108, unreported, 1999 Ohio App. LEXIS 4734 (applying Hybud and Zell, the court determined that carbon monoxide vapors or fumes from a faulty furnace at a residential apartment was a pollutant under policy exclusion language which defined pollutant as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste.)
The term carbon monoxide is defined as follows:
 * * * a colorless odorless very toxic gas CO that burns to carbon dioxide with a blue flame and is formed as a product of the incomplete combustion of carbon.
Webster's Ninth New Collegiate Dictionary (1990) 206.
It cannot be contested that carbon monoxide is a gaseous * * * irritant or contaminant * * *, the proof of this being demonstrated by the injuries suffered by the inhabitants of the apartment who were exposed to the gas. Also, carbon monoxide fits the definition of a vapor, which term is defined as follows:
 1: diffused matter (as smoke or fog) suspended floating in the air and impairing its transparency. 2a: a substance in the gaseous state as distinguished from the liquid or solid state. * * *. (Italicization added.)
Webster's Ninth New Collegiate Dictionary (1990) 1304.
In another interpretation, carbon monoxide fits the definition of chemical since carbon monoxide, a substance, is a product of the incomplete combustion of carbon, with the combustion being a chemical process and the product (carbon monoxide, aka CO) being a chemical compound. Chemical is defined as follows:
 * * * a substance (as an element or chemical compound) obtained by a chemical process * * *.
Webster's Ninth New Collegiate Dictionary (1990) 230.
Accordingly, the pollution exclusion in the insurance contract issued to the insureds clearly and unambiguously precluded coverage for the claims asserted by the injured parties. Therefore, the trial court erred in straining to find an ambiguity where none existed, and erred in granting summary judgment to defendants-appellees and not granting summary judgment to Indiana. The first and second assignments of error are found to have merit. The remaining assignments are moot. See App.R. 12(a)(1)(c).
Based on the foregoing, we reverse the ruling of the trial court and remand for further proceedings.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellees costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________________ JAMES D. SWEENE, JUDGE
DIANE KARPINSKI, P.J. and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] The injured parties alleged in their Complaints that RMI managed the apartment building for Highland.
[2] As iterated by Indiana in its appellate brief, at 3, there are four policies of insurance in play:
 These policies included: (1) Comprehensive Business Policy No. 42165531, issued to Highland [and Herbert Chisling]; (2) Commercial Umbrella Liability Policy No. CU 9159023, issued to Highland [and Herbert Chisling]; (3) Comprehensive Business Policy No. 42152896, issued to Renaissance on Chagrin Ltd. Partnership; and (4) Commercial Umbrella Liability Policy No. 14120397, issued to Renaissance on Chagrin Ltd. Partnership.
[Explanation added.]
Policies 1 and 2 were in effect from March 7, 1997, to March 7, 1998. Policies 3 and 4 were in effect from March 28, 1996 to March 28, 1997.
[3] While the motion for summary judgment was pending but prior to a ruling thereon, the tort claims of Anderson and Wojtala and the third-party defendant East Ohio Gas Company were settled. This settlement did not resolve the issues relative to insurance coverage.